**OUTTEN & GOLDEN LLP**
Melissa Pierre-Louis
Luis C. Hansen
Mikael Rojas
685 Third Avenue, 25th Floor
New York, New York 10017
(212) 245-1000
Attorneys for Plaintiff

## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| CELSO OSWALDO FERNANDEZ, | |
| Plaintiff, | |
| v. | **SECOND AMENDED COMPLAINT** |
| NYC SCHOOL SUPPORT SERVICES, ABM INDUSTRIES INCORPORATED, ABM JANITORIAL SERVICES, INC., JOSEPH ASTARITA, in his individual and official capacity, CLAUDIO ORTIZ, in his individual capacity, and HECTOR LABOY, in his individual capacity, | No. 18-CV-1638-MKB-LB |
| Defendants. | |

## NATURE OF THE ACTION

1.      Plaintiff Celso Fernandez ("Mr. Fernandez")'s nearly eighteen-year career as a

New York City public school cleaner came to a sudden end in June 2017, when Defendants

terminated his employment because of his age and disability and in retaliation for his requests for

reasonable accommodations. Throughout his employment, Defendants ABM Industries

Incorporated and its subsidiary ABM Janitorial Services, Inc. ("ABM"), New York City School

Support Services ("NYCSSS"), Joseph Astarita ("Astarita"), Claudio Ortiz ("Ortiz"), and Hector

Laboy ("Laboy") (together "Defendants") discriminated and retaliated against Mr. Fernandez because of his age and disability.

2.       Defendants' acts of discrimination and retaliation against Mr. Fernandez included, but were not limited to: (1) subjecting him to a hostile work environment based on age, including threats of violence, verbal assaults, and significantly reducing his pay by denying him regular overtime hours following his refusal to retire; (2) discriminating against him based on his disability, including failing to provide a reasonable accommodation, subjecting him to a hostile work environment by repeatedly mocking his body paralysis and limp, and assigning him physically demanding work that endangered his wellbeing; (3) interfering with his ability to exercise his FMLA rights and retaliating against him for taking FMLA leave by willingly changing his schedule to a time that made it impossible for Mr. Fernandez to go to his medical appointments; and (4) ultimately terminating his employment in retaliation for not retiring and for his requests for reasonable accommodations. Defendants' conduct was so extreme that it caused Mr. Fernandez to suffer strokes and neurological problems, including partial paralysis of the left side of his body, dizziness, numbness, walking with a limp, pain, anxiety, and depression.

3.       Mr. Fernandez now brings this action under federal, state, and local law against Defendants for failure to provide a reasonable accommodation for his disability, discrimination, and retaliation in violation of Title I of the Americans With Disabilities Act ("ADA"), 42 U.S.C § 12112(a), the New York State Human Rights Law ("NYSHRL"), N.Y. Exec. L. §§ 290 *et seq.*, and the New York City Human Rights Laws ("NYCHRL"), N.Y.C. Admin. Code §§ 8-101 *et seq*. He also brings claims for violations of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. §§62 *et seq.*, the Family and Medical Leave Act ("FMLA"), 29 U.S.C. § 2601 et seq., the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201, et seq., New York Labor

Law ("NYLL") §195(3), and New York common law. He seeks declaratory relief, actual damages, compensatory damages, liquidated damages, punitive damages, interest, attorneys' fees and costs.

## JURISDICTION AND VENUE

4.      This Court has subject matter jurisdiction over Mr. Fernandez's ADEA, ADA, FMLA, and FLSA claims pursuant to 28 U.S.C. § 1331 because these claims arise out of statutes of the United States.

5.      This Court has supplemental jurisdiction over Mr. Fernandez's claims under the New York State Human Rights Laws, the New York City Human Rights Laws, the New York Labor Law, and the New York common law claims pursuant to 28 U.S.C. § 1367(a) because these claims are so closely related to his claims under the ADEA, the ADA, and the FLSA that they form part of the same case or controversy under Article III of the United States Constitution.

6.      Venue lies in this judicial district pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to this action, including the unlawful employment practices alleged herein, occurred within the Eastern District of New York.

7.      On July 14, 2017, Mr. Fernandez filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") against Defendant NYCSSS, alleging discrimination on the basis of age and disability and retaliation. See Exh. A. Plaintiff received a Notice of Right to Sue from the EEOC on December 22, 2017.

## PARTIES

**Plaintiff**

8.      Plaintiff Celso Fernandez is a fifty-six-year-old individual residing in Union County in the State of New Jersey.

9.      Since August 1999, Mr. Fernandez worked as a New York City public school cleaner at the Mary White Ovington School, K331/I.S. 30 (the "School").  For nearly eighteen years[1], Mr. Fernandez was routinely praised for his excellent work and work ethic by his supervisors, teachers, and parents. According to many of Mr. Fernandez's colleagues, he was a meticulous and tireless worker and an honest and pleasant person. Until the events that led to this suit, Mr. Fernandez never once received a negative review or performance warning.

10.      In July 2013, ABM became Mr. Fernandez's employer when he was reassigned to another one of the School's buildings located at 7002 4th Avenue, Brooklyn, New York. Though he switched building locations, the essential functions of his job remained the same. A few months after Mr. Fernandez moved to the 7002 4th Avenue location, ABM hired Defendant Hector Laboy to work in the same location as a cleaner.

11.      In approximately September 2015, ABM hired Defendant Claudio Ortiz as Mr. Fernandez's direct supervisor.

12.      On August 12, 2016, New York City School Support Services replaced ABM as Mr. Fernandez's employer. NYCSSS also became the employer of Mr. Ortiz and Mr. Laboy. When NYCSSS replaced ABM as Mr. Fernandez's employer, all of the other terms and conditions of Mr. Fernandez's employment remained the same. Mr. Fernandez continued

---

[1] Though Mr. Fernandez's employer changed from ABM to NYCSSS in August 2016, he remained a member of the SEIU 32BJ Union as an NYC public school cleaner from August 1999 until NYCSSS terminated his employment in June 2017.

working at the Mary White Ovington School as a member of the same SEIU 32BJ Union, and with the same salary, hours, coworkers, and supervisors.

13.     On January 14, 2016, Mr. Fernandez suffered a stroke due to the severe and ongoing hostile working environment that Defendants created. This led Mr. Fernandez to suffer from an ongoing neurological disability. Due to his stroke, Mr. Fernandez suffers from partial paralysis of the left side of his body, numbness, pain, dizziness, and walks with a limp. He also later developed severe anxiety and depression due to Defendants' discrimination and retaliation.

14.     Mr. Fernandez's conditions are cognizable disabilities pursuant to the ADA, the NYSHRL, and the NYCHRL, and a serious medical condition pursuant to the FMLA.

15.     At all times relevant to this Complaint, all Defendants were aware of Plaintiff's disability.

16.     At all times relevant and material to this action, Mr. Fernandez was employed in New York State and was the Defendants' employee within the meaning of the ADEA, ADA, FMLA, FLSA, NYSHRL, NYCHRL, and NYLL.

**Defendants**

*ABM Industries Incorporated*

16.     Upon information and belief, Defendant ABM Industries Incorporated is a multinational corporation with headquarters located at One Liberty Plaza, 7th Floor, New York, NY 10006.

17.     Upon information and belief, during the relevant time period, Defendant ABM Industries Incorporated employed over 50 employees who were employed at or within 75 miles of the School.

18.     From July 2013 to August 11, 2016, ABM Industries Incorporated was Plaintiff's employer within the meaning of the ADEA, ADA, FMLA, FLSA, NYSHRL, NYCHRL, and NYLL.  ABM had the power to hire and fire Mr. Fernandez, control the terms and conditions of his employment, and maintain employment records.

*ABM Janitorial Services, Inc.*

19.     Upon information and belief, ABM Janitorial Services, Inc., a subsidiary of ABM Industries Incorporated, provides janitorial services to its clients.

20.     ABM Janitorial Services, Inc. is located at 800 Palisade Ave., Fort Lee, NJ 07024.

21.     Upon information and belief, during the relevant time period, Defendant ABM Janitorial Services, Inc. employed over 50 employees who were employed at or within 75 miles of the School.

22.     From July 2013 to August 11, 2016, ABM Janitorial Services, Inc. was Plaintiff's employer within the meaning of the ADEA, ADA, FMLA, FLSA, NYSHRL, NYCHRL, and NYLL.  ABM Janitorial Services, Inc. had the power to hire and fire Mr. Fernandez, control the terms and conditions of his employment, and maintain employment records.

*New York City School Support Services*

23.     Upon information and belief, Defendant NYCSS is a Type C not-for-profit corporation organized under the Not-For-Profit Corporation Law of the State of New York. Though Defendant is an instrumentality of the City of New York, it is legally separate from the City.

24.     NYCSSS was incorporated to staff cleaners for New York City public schools. NYCSSS's contract with the City was registered on April 28, 2016. Upon information and belief,

during the relevant time period, Defendant NYCSSS employed over 50 employees who were employed at or within 75 miles of the School.

25.     From August 12, 2016 to June 29, 2017, NYCSSS was Plaintiff's employer within the meaning of the ADEA, ADA, FMLA, FLSA, NYSHRL, NYCHRL, and NYLL. NYCSSS had the power to hire and fire Mr. Fernandez, control the terms and conditions of his employment, and maintain employment records.

*Claudio Ortiz*

26.     At all relevant times, Defendant Claudio Ortiz was an ABM and an NYCSSS employee.

27.     Upon information and belief, Mr. Ortiz was Mr. Fernandez's direct supervisor from September 2015 until June 2017.

28.     At all relevant times, Mr. Ortiz aided and abetted the discrimination and retaliation against Mr. Fernandez.

29.     Mr. Ortiz is being sued in his individual capacity.

*Joseph Astarita*

30.     At all relevant times, Defendant Joseph Astarita was a New York City Department of Education employee.

31.     Upon information and belief, Mr. Astarita oversaw the administration of the NYCSSS employees at the Mary White Ovington School beginning August 12, 2016. In this role, Mr. Astarita acted as one of Mr. Fernandez's supervisors and Mr. Ortiz's direct supervisor.

32.     At all relevant times, Mr. Astarita aided and abetted the discrimination and retaliation against Mr. Fernandez.

33.     Mr. Astarita is being sued in his individual and official capacity.

*Hector Laboy*

34.     At all relevant times, Defendant Hector Laboy was a cleaner at Mary White Ovington School. He was employed by ABM prior to August 12, 2016 and by NYCSSS afterward.

35.     Upon information and belief, Mr. Laboy was Mr. Fernandez's coworker from approximately 2014 until June 2017.

36.     At all relevant times, Mr. Laboy aided and abetted the discrimination and retaliation against Mr. Fernandez.

37.     Mr. Laboy is being sued in his individual capacity.

## **FACTUAL ALLEGATIONS**

38.     Mr. Fernandez began working for ABM as a cleaner at the Mary White Ovington School in July 2013.

39.     As a cleaner, the essential functions of Mr. Fernandez's job included cleaning school premises, making necessary repairs, and preparing classrooms and other school premises for special events or extracurricular activities.

40.     During his tenure, Mr. Fernandez was a stellar employee and consistently received positive feedback from his supervisors.

**Defendants Discriminated Against Mr. Fernandez and Subjected Him to a Hostile Work Environment Because of His Age.**

41.     After Mr. Ortiz became Mr. Fernandez's supervisor in September 2015, he immediately began discriminating against Mr. Fernandez because of his age.

42.     In September 2015, Mr. Ortiz asked Mr. Fernandez about his age and whether Mr. Fernandez intended to retire. When Mr. Fernandez explained that he was not going to retire, Mr. Ortiz began coercing him to do so. Mr. Ortiz frequently pressured Mr. Fernandez to retire. He told Mr. Fernandez that he had previously assisted another employee he supervised to retire and urged Mr. Fernandez to do the same.

43.     Mr. Fernandez resisted Mr. Ortiz's pressure to retire and repeatedly explained that, despite his age, he enjoyed working and was not ready to retire.

44.     After Mr. Fernandez refused to retire, Mr. Ortiz and Defendant Hector Laboy, Mr. Ortiz's childhood friend and Mr. Fernandez's coworker, engaged in a coordinated effort of harassment, intimidation, and retaliation to force Mr. Fernandez to quit.

45.     For example, in October 2015, Mr. Ortiz stopped assigning overtime to Mr. Fernandez. Instead, Mr. Ortiz assigned Mr. Fernandez's overtime shifts to Mr. Fernandez's younger coworkers, including Mr. Laboy and himself.

46.     Overtime time pay was a significant component of Mr. Fernandez's compensation and should have been assigned based on his accrued seniority, as stated in SEIU 32BJ's Collective Bargaining Agreement. As the head cleaner and the cleaner with the most seniority at the School, Mr. Fernandez was entitled to choose overtime shifts before his other coworkers. This overtime pay increased Mr. Fernandez's yearly income substantially. Consequently, from October 2015 until Mr. Fernandez's termination—when Defendants refused to allow Mr. Fernandez to work overtime—Mr. Fernandez's overtime pay decreased from approximately $33,000 per year to an approximate average of $2,500 per year.

47.     Mr. Fernandez complained about the unjustified reduction of his overtime hours to Mr. Ortiz, ABM's human resources ("HR") department, NYCSSS's HR department, and his union representative multiple times throughout his employment.

48.     Despite Mr. Fernandez's complaints and requests to work overtime, Defendants refused to assign him any overtime work until July 2016. Even then, the amount of overtime hours that Mr. Fernandez received was only a fraction of what he received prior to October 2015. Mr. Fernandez only made approximately $1,775 in 2016 and $4,000 in 2017 in overtime, compared to approximately $33,000 in prior years.

49.     Soon after Defendants took away Mr. Fernandez's overtime hours, Mr. Ortiz and Mr. Laboy began hiding Mr. Fernandez's time card in an attempt to interfere with Mr. Fernandez's ability to accurately record his work hours. Though Mr. Fernandez complained to Mr. Ortiz about the missing time cards, Mr. Ortiz and Mr. Laboy continued hiding them. Because Mr. Ortiz ignored Mr. Fernandez's complaints, Mr. Fernandez recorded his hours manually.

50.     Because of Defendants' interference with Mr. Fernandez's time cards, Defendants failed to pay Mr. Fernandez at least 16 overtime hours that he worked in August 2016, without explanation, even though Mr. Fernandez kept track of his hours manually.

51.     At the same time, Mr. Laboy and other ABM employees continued subjecting Mr. Fernandez to a hostile work environment based on age.  For example, Mr. Laboy frequently told Mr. Fernandez: "You're too old, why don't you stay home?" and "You should retire."

52.     In December 2015, Mr. Laboy confronted Mr. Fernandez near the staff bathroom, and he began cursing at and threating Mr. Fernandez, including words to the effect: "Watch what we have coming for you, motherfucker;" and accusing Mr. Fernandez of being "a fucking thief"

and a "snitch."  Mr. Laboy made these types of comments approximately three or four times per

week until Mr. Fernandez's termination in July 2017.

53.      On January 14, 2016 at 6:00 AM, Mr. Fernandez arrived at work to find his locker

destroyed. This was at least the third time that Mr. Laboy vandalized Mr. Fernandez's locker.

54.      That same day, Mr. Fernandez complained to Mr. Ortiz about the destruction of

his locker. Mr. Ortiz, however, laughed off Mr. Fernandez's complaint and became visibly

annoyed when Mr. Fernandez insisted that Mr. Ortiz address the situation. Dejected, Mr.

Fernandez gathered his tools and returned to the locker room area to fix his locker himself.

55.      Once Mr. Fernandez reached his locker, he lost consciousness. When he awoke,

he discovered that he was in the hospital. According to his doctors, the severe stress and anxiety

caused by the harassment at work caused him to have a neurological episode with stroke-like

symptoms.

56.      Mr. Fernandez was hospitalized for approximately four days. Once he was

discharged, he was referred to his neurologist, Dr. Maggie Morr, M.D., and was instructed to

take time off from work to physically and mentally recover.

**Defendants Discriminated Against Mr. Fernandez Because of His Disability and Retaliated**
**Against Him Because He Requested Reasonable Accommodations.**

57.      Mr. Fernandez returned to work only two weeks after his stroke, over his doctors'

objections, because he feared that Mr. Ortiz would use his medical leave as an excuse to fire him.

Mr. Fernandez returned to work so quickly, that the left side of his body was still partially

paralyzed and he was walking with a limp.

58.      When Mr. Fernandez returned, he immediately informed Mr. Ortiz of his

limitations which prevented him from lifting heavy objects, climbing ladders, or moving quickly.

59.    Mr. Ortiz ignored Mr. Fernandez's limitations. Rather than engage in an interactive process[2] to reasonably accommodate Mr. Fernandez, Mr. Ortiz began assigning Mr. Fernandez more physically demanding work.

60.    For example, following Mr. Fernandez's return, Mr. Ortiz instructed Mr. Fernandez to clean desks in the School's basement during the summer of 2016. Mr. Ortiz knew that this assignment required Mr. Fernandez to use powerful chemicals in classrooms with poor ventilation. These chemicals caused Mr. Fernandez to suffer from migraines. When Mr. Fernandez complained about the migraines, Mr. Ortiz laughed at him. As a result, Mr. Fernandez suffered from daily migraines.

61.    Mr. Ortiz also informed Mr. Fernandez that he would provide him with overtime hours from July 2016 to August 2016, but only if Mr. Fernandez cleaned desks in the basement- a requirement which Mr. Ortiz knew exacerbated Mr. Fernandez's condition. Because Mr. Fernandez had gone approximately nine months without overtime pay at that time – losing approximately $25,000 in compensation – Mr. Fernandez and his family needed the additional income. Ultimately, Mr. Fernandez worked the overtime hours despite the migraines he suffered.

62.    The ongoing hostile work environment upon Mr. Fernandez's return to work in February 2016 substantially interfered with Mr. Fernandez's recovery. As a result, Mr. Fernandez's neurologist, Dr. Morr, wrote to ABM requesting that ABM reassign Mr. Fernandez to another job location. Dr. Morr explained that:

> [Mr. Fernandez] has been under stressful situations in his job (conflicting interaction with his new immediate superior), [which] resulted with loss of consciousness/seizures and Hospitalization. [. . .] The patient also displays symptoms of anxiety and depressed mood. It will be addressed by a mental health professional. Current available treatment methods will have

---

[2] The ADA requires an employer to engage in an "interactive process" with an employee to determine whether an accommodation is reasonable. The NYCHRL refers to this process as a "cooperative dialogue." For clarity, this Amended Complaint will refer to both as the "interactive process."

> only minimal success, largely due to persistent extrinsic aggravating
> factors. The patient was advised to limit aggravating and stressful
> interactions, as well as emotional exertion and fearful environment. It is
> highly recommended to reassign him to different job location.

63.     Not only did ABM fail to reasonably accommodate Mr. Fernandez, but it failed to

even engage in the interactive process with Mr. Fernandez regarding a possible accommodation.

64.     Because of ABM's inaction, Mr. Fernandez's union representative, Mr. Gene

Szymanski, wrote to ABM on May 27, 2016. In that letter, the union representative explained

that Mr. Ortiz, Mr. Laboy, and other AMB employees had been harassing Mr. Fernandez, and

asked that "this supervisor be instructed to immediately cease and desist from any further

harassing behavior or be cited for harassment."

65.     ABM and Mr. Ortiz ignored Dr. Morr's and Mr. Szymanski's letters and

continued to discriminate against Mr. Fernandez because of his disability and to retaliate against

him for seeking reasonable accommodations.

66.     This willful misconduct continued after August 12, 2016, when NYCSSS

replaced ABM as Mr. Fernandez's employer until Mr. Fernandez's termination on June 29,

2017.

**Defendants Interfered with Mr. Fernandez's Ability to Exercise His FMLA Rights and
Retaliated Against Him for Going on Protected FMLA Leave.**

67.     On August 16, 2016, Mr. Fernandez informed Mr. Ortiz that Mr. Fernandez's

elderly father was sick, and that Mr. Fernandez needed time off to care for him.

68.     At no point did Mr. Ortiz or NYCSSS provide Mr. Fernandez with information

regarding his rights pursuant to the Family Medical Leave Act, as that law requires.

69.     Mr. Ortiz ultimately granted Mr. Fernandez an FMLA leave of absence from

August 18, 2016 until September 2, 2016.

70.     The same day that Mr. Fernandez requested FMLA leave, Mr. Ortiz retaliated against Mr. Fernandez for exercising his FMLA rights by changing Mr. Fernandez's schedule from 6:00 a.m. to 3:00 p.m. to 10:00 a.m. to 7 p.m.

71.     Mr. Fernandez understood that this change in schedule was punishment for attempting to exercise his FMLA rights, as the later shifts required more work and were more physically demanding. This was the first time in seventeen years that Mr. Fernandez's schedule changed.

72.     Mr. Fernandez objected to this schedule change to Mr. Ortiz and Mr. Astarita. Soon after Mr. Fernandez objected to the shift change, Mr. Ortiz gave Mr. Fernandez his first ever written warning in his seventeen years working as a public school cleaner.

73.     This warning is pretextual on its face as it accused Mr. Fernandez of wrongdoing for trivial matters. For example, it alleged that Mr. Fernandez committed misconduct because he turned off the lights in the library at the end of the day. The warning also alleged that Mr. Fernandez turned off the circuit breakers to one of the buildings before he left for the night and described this as "TAMPERING WITH THE BUILDING EQUIPMENT" and "SABOTAGE."

74.     Mr. Fernandez immediately objected to this pretextual warning to Mr. Astarita, Mr. Ortiz, and his union representative.

75.     On September 14, 2016, just five days following Mr. Fernandez's receipt of the warning and his objection to it, Mr. Ortiz assigned Mr. Fernandez to clean a set of stairs, in addition to his daily assignments. Mr. Fernandez informed Mr. Ortiz that he believed the assignment was unfair because he already had to clean the two sets of stairs with the most foot traffic; and, two of his coworkers had significantly less work than him. In response, Mr. Ortiz became hostile towards Mr. Fernandez and demanded that he clean the stairs or leave. Mr. Ortiz

became aggressive and yelled at Mr. Fernandez, to the extent that Mr. Fernandez believed that Mr. Ortiz was going to attack him.

76.     Distraught, Mr. Fernandez walked over to the stairs and began mopping. Mr. Ortiz's aggressive behavior distressed Mr. Fernandez so much, that Mr. Fernandez suffered another seizure while cleaning the stairs and lost consciousness. Mr. Fernandez was rushed to the hospital after a coworker found him unconscious on the floor.

77.     Mr. Ortiz had direct knowledge that his aggressive and hostile behavior toward Mr. Fernandez had caused Mr. Fernandez to suffer from strokes in the past.

**Defendants Illegally Terminate Mr. Fernandez's Employment Because of His Age and in Retaliation for His Requests for Reasonable Accommodations.**

78.     Upon Mr. Fernandez's discharge from the hospital on approximately September 15, 2016, Dr. Morr allowed him to return to work. However, because of this second neurological episode and Mr. Fernandez's slow physical recovery from the first episode, Dr. Morr instructed Mr. Fernandez to attend physical therapy in the afternoons. She also gave him a doctor's note stating as such.

79.     Sometime after September 15, 2016, Mr. Fernandez gave Dr. Morr's note to his supervisors and requested the reasonable accommodation of leaving work a few hours early to attend his therapy sessions. He also explained that the value of having the therapy in the afternoon was to aid his recovery after physically demanding workdays.

80.     This request would not have been an undue burden on NYCSSS because it could have reassigned Mr. Fernandez to the 6:00 a.m. to 3:00 p.m. shift.

81.     Instead of approving Mr. Fernandez's reasonable request, NYCSSS assigned Mr. Fernandez to an even later shift, from 11:30 a.m. to 8:00 p.m., making it impossible for Mr.

Fernandez to go to physical therapy in the afternoon or getting rest, as recommended by his doctor.

82.    Mr. Fernandez objected to this subsequent schedule change, and asked Mr. Ortiz on three separate occasions to allow him to attend physical therapy in the afternoon, explaining that Dr. Morr recommended that he attend physical therapy at that time so he could rest after work.

83.    Mr. Ortiz responded to Mr. Fernandez's request by laughing at him and telling him that a change in the schedule was "not possible."

84.    Given Mr. Ortiz's response to Mr. Fernandez's requests, Mr. Fernandez asked Defendant Astarita on November 7, 2016 to change his shift so he could attend physical therapy sessions.

85.    Though Mr. Astarita was Mr. Ortiz's supervisor, Mr. Astarita claimed that he had to ask Mr. Ortiz if the shift change was possible. Mr. Fernandez explained to Mr. Astarita that he had already asked, and that Mr. Ortiz had said no.

86.    On November 14,2016, Mr. Fernandez emailed Mr. Astarita to make a second request for a reasonable accommodation. He also gave a copy of the letter to Mr. Ortiz.

87.    Defendants not only disregarded his requests for accommodations, but they also began harassing Mr. Fernandez because of his disability and in retaliation for his requests. For example, Mr. Ortiz imitated Mr. Fernandez's limp and sarcastically asked "how are you doing? What happened to you?" Mr. Ortiz continued to make these comments to Mr. Fernandez approximately two or three times a day.

88.    Like Mr. Ortiz, Mr. Laboy imitated Mr. Fernandez's limp and made fun of his inability to turn his head quickly.

89.     On several occasions, Mr. Ortiz hid Mr. Fernandez's tools just so he could see Mr. Fernandez's frustration while Mr. Fernandez searched for them. Not only did this interfere with Mr. Fernandez's ability to perform his duties, but it also caused him a tremendous amount of emotional distress. For example, on December 23,2016, Mr. Ortiz hid Mr. Fernandez's mop bucket and Mr. Fernandez spent fifty (50) minutes searching for it. Seeing Mr. Fernandez's frustration, Mr. Ortiz and Mr. Laboy began laughing at Mr. Fernandez. The distress that this caused led to Mr. Fernandez experiencing stroke-like symptoms, including partial paralysis of the left side of his body.

90.     On approximately May 31, 2017, Mr. Fernandez fell again while cleaning a staircase.

91.     As a consequence, Mr. Fernandez took two days of medical leave to recover from the fall.

92.     A few days after he returned from leave, on approximately June 8,2017, Mr. Ortiz assigned Mr. Fernandez to scrub the art room floor and wax it. Though this task was more difficult than Mr. Fernandez's usual tasks, and was usually done by more than one person, Mr. Fernandez was instructed to complete this assignment by himself. Not only was this assignment part of Defendants' ongoing discrimination against Mr. Fernandez based on his age and disability, but it also willfully endangered Mr. Fernandez. At this point, Mr. Ortiz knew that Mr. Fernandez had lost consciousness due to seizures twice and had fallen down the stairs twice.

93.     On June 15, 2017, after over twenty months of Defendants subjecting Mr. Fernandez to discrimination, Mr. Astarita informed Mr. Fernandez via letter that NYCSSS was terminating his employment, effective June 29, 2017. In his letter, Mr. Astarita claimed that Defendants were firing Mr. Fernandez because he was "not completing [his] work schedule[.]"

Though Defendants failed to accommodate Mr. Fernandez's disability time and again, the letter claimed that Mr. Astarita had "gone above and beyond in doing everything [he could] to accommodate and assist [Mr. Fernandez][.]" The letter concluded that "[i]t is quite clear however, that [Mr. Fernandez] seem[ed] to have no intention of [completing his work schedule]."

94.     Though Mr. Fernandez had worked as a cleaner for eighteen years and had no performance issues prior to Mr. Ortiz and Mr. Astarita becoming his supervisors (or prior to his disability and subsequent accommodation requests), NYCSSS fired Mr. Fernandez without offering him any severance or the chance to work at another school.


## CLAIMS FOR RELIEF

### FIRST CLAIM FOR RELIEF
**(Discrimination and Retaliation Because of Age)**
**(Age Discrimination in Employment Act of 1967, 29 U.S.C. §§62 *et seq*.)**
**(as to Defendant NYCSSS)**

95.     Mr. Fernandez incorporates by reference the allegations contained in the previous paragraphs of the Complaint as if fully rewritten herein.

96.     The Age Discrimination in Employment Act of 1967 ("ADEA") prohibits any employer from discriminating or retaliating against an employee in regard to the terms and conditions of his employment on the basis of the employee's age. 29 U.S.C. §§62 *et seq*.

97.     Defendant NYCSSS was a qualified employer within the meaning of the ADEA.

98.     Defendant NYCSSS violated the ADEA when it harassed Mr. Fernandez and terminated his employment because of his age.

99.     Defendant's violations of the ADEA, as described in the Complaint, were willful and intentional. Defendant did not make a good faith effort to comply with the ADEA with respect to Mr. Fernandez.

100.     As a direct result of Defendant's discriminatory acts, Mr. Fernandez is entitled to damages including, but not limited to past and future lost wages and benefits, damages to compensate him for past and future physical and emotional distress, punitive damages, reasonable attorneys' fees and costs of this action, and pre-judgment interest.

**SECOND CLAIM FOR RELIEF**
**(Discrimination and Retaliation Because of Age)**
**(New York State Human Rights Law, N.Y. Exec. L. §§290 *et seq*.)**
**(as to Defendants ABM and NYCSSS)**

101.     Mr. Fernandez incorporates by reference the allegations contained in the previous paragraphs of the Complaint as if fully rewritten herein.

102.     The NYSHRL prohibits any employer from discriminating or retaliating against any employee based on his age.

103.     Defendants ABM and NYCSSS were qualified employers within the meaning of the NYSHRL.

104.     Defendants violated the NYSHRL when they took away Mr. Fernandez's overtime pay, harassed him, and terminated his employment because of his age.

105.     Defendants' violations of the NYSHRL, as described in the Complaint, were willful and intentional. Defendants did not make a good faith effort to comply with the NYSHRL with respect to Mr. Fernandez.

106.    As a direct result of Defendants' discriminatory acts, Mr. Fernandez is entitled to damages including, but not limited to past and future lost wages and benefits, damages to compensate him for past and future physical and emotional distress, and pre-judgment interest.

**THIRD CLAIM FOR RELIEF**
**(Discrimination and Retaliation Because of Age)**
**(New York City Human Rights Law, N.Y.C. Admin. Code § 8-101 *et seq.*)**
**(as to all Defendants)**

107.    Mr. Fernandez incorporates by reference the allegations contained in the previous paragraphs of the Complaint as if fully rewritten herein.

108.    The NYCHRL prohibits any employer from discriminating or retaliating against any employee based on their age.

109.    Defendants ABM and NYCSSS were qualified employers within the meaning of the NYCHRL.

110.    Defendants violated the NYCHRL when they took away Mr. Fernandez's overtime pay, harassed him, and terminated his employment because of his age.

111.    Defendants Astarita, Ortiz, and Laboy are also liable pursuant to the NYCHRL as aiders and abettors of discrimination and retaliation.

112.    Defendants knew that their actions constituted unlawful discrimination and showed willful and/or reckless disregard for Mr. Fernandez's statutorily protected rights.

113.    Mr. Fernandez is entitled to damages including, but not limited to past and future lost wages and benefits, damages to compensate him for past and future physical and emotional distress, punitive damages, reasonable attorneys' fees and costs of this action, and pre-judgment interest.

**FOURTH CLAIM FOR RELIEF**
**(Discrimination and Retaliation Because of Disability)**
**(Title I of the Americans With Disabilities Act, 42 U.S.C 12112(a).)**
**(as to Defendant NYCSSS)**

114.   Mr. Fernandez incorporates by reference the allegations contained in the previous paragraphs of the Complaint as if fully rewritten herein.

115.   The Americans with Disabilities Act prohibits any employer from discriminating against an employee in regard to job application procedures . . . hiring . . . or discharge of employment on the basis of disability. 42 U.S.C § 12112(a).

116.   Defendant NYCSSS was a qualified employer within the meaning of the ADA. Plaintiff is a qualified individual with a disability who was able to perform the essential functions of his job with or without a reasonable accommodation pursuant to the ADA.

117.   Defendant NYCSSS violated the Americans with Disabilities Act when it failed to provide Mr. Fernandez with reasonable accommodations for his disability, subjected him to a hostile work environment because of his disability, decreased his pay and ultimately terminated his employment because of his disability and requests for reasonable accommodations.

118.   Defendant's violations of the Americans with Disabilities Act, as described in the Complaint, were willful and intentional. Defendant did not make a good faith effort to comply with the ADA with respect to Mr. Fernandez.

119.   As a direct result of Defendant's discriminatory acts, Mr. Fernandez is entitled to damages including, but not limited to past and future lost wages and benefits, damages to compensate him for past and future physical and emotional distress, punitive damages, reasonable attorneys' fees and costs of this action, and pre-judgment interest.

**FIFTH CLAIM FOR RELIEF**
**(Discrimination and Retaliation Because of Disability)**
**(New York State Human Rights Law, N.Y. Exec. L. §§290 *et seq*.)**

**(as to Defendants ABM and NYCSSS)**

120.    Mr. Fernandez incorporates by reference the allegations contained in the previous paragraphs of the Complaint as if fully rewritten herein.

121.    The NYSHRL prohibits any employer from discriminating against any employee based on their disability.

122.    Defendants ABM and NYCSSS were qualified employers within the meaning of the NYSHRL. Plaintiff is a qualified individual with a disability who was able to perform the essential functions of his job with or without a reasonable accommodation pursuant to the NYSHRL.

123.    Defendants violated the NYSHRL when they failed to provide Mr. Fernandez with reasonable accommodations for his disability, subjected him to a hostile work environment because of his disability, decreased his pay and ultimately terminated his employment because of his disability and requests for reasonable accommodations.

124.    Defendants' violations of the NYSHRL, as described in the Complaint, were willful and intentional. Defendants did not make a good faith effort to comply with the NYSHRL with respect to Mr. Fernandez.

125.    As a direct result of Defendants' discriminatory acts, Mr. Fernandez is entitled to damages including, but not limited to past and future lost wages and benefits, damages to compensate him for past and future physical and emotional distress, and pre-judgment interest.

**SIXTH CLAIM FOR RELIEF**
**(Discrimination and Retaliation Because of Disability)**
**(New York City Human Rights Law, N.Y.C. Admin. Code § 8-101 *et seq.*)**
**(as to all Defendants)**

126.    Mr. Fernandez incorporates by reference the allegations contained in the previous paragraphs of the Complaint as if fully rewritten herein.

127.    The NYCHRL prohibits any employer from discriminating against any employee based on their disability.

128.    Defendants ABM and NYCSSS were qualified employers within the meaning of the NYCHRL. Plaintiff is a qualified individual with a disability who was able to perform the essential functions of his job with or without a reasonable accommodation pursuant to the NYCHRL.

129.    Defendants violated the NYCHRL when they failed to provide Mr. Fernandez with reasonable accommodations for his disability, subjected him to a hostile work environment because of his disability, decreased his pay and ultimately terminated his employment because of his disability and requests for reasonable accommodations.

130.    Defendants Astarita, Ortiz, and Laboy are also liable pursuant to the NYCHRL as aiders and abettors of discrimination and retaliation.

131.    Defendants knew that their actions constituted unlawful discrimination and showed willful and/or reckless disregard for Mr. Fernandez's statutorily protected rights.

132.    Mr. Fernandez is entitled to damages including, but not limited to past and future lost wages and benefits, damages to compensate him for past and future physical and emotional distress, punitive damages, reasonable attorneys' fees and costs of this action, and pre-judgment interest.

**SEVENTH CLAIM FOR RELIEF**
**(Retaliation for the Exercise of FMLA Rights)**
**(Family and Medical Leave Act, 29 U.S.C. § 2601 et seq.)**
**(as to Defendant NYCSSS)**

133.     Mr. Fernandez incorporates by reference the allegations contained in the previous paragraphs of the Complaint as if fully rewritten herein.

134.     Mr. Fernandez put Defendant NYCSSS on notice of his need for leave under the Family and Medical Leave Act, for which he was qualified, when he notified Defendants in August 2016 of his father's illness.

135.     Defendant violated the Family and Medical Leave Act when it altered the terms and conditions of Mr. Fernandez's employment through Mr. Ortiz's and Mr. Laboy's harassment of Mr. Fernandez and Mr. Ortiz changed Mr. Fernandez's schedule in retaliation for Mr. Fernandez's attempt to exercise of his FMLA rights.

136.     Defendant's violations of the Family and Medical Leave Act, as described in the Complaint, were willful and intentional. Defendants did not make a good-faith effort to comply with the FMLA with respect to Mr. Fernandez.

137.     Mr. Fernandez is entitled to damages as a result of Defendants' unlawful acts, including past and future lost wages and benefits, liquidated damages, and reasonable attorneys' fees and costs of this action.

**EIGHTH CLAIM FOR RELIEF**
**(Interference with FMLA Rights)**
**(Family and Medical Leave Act, 29 U.S.C. § 2601 et seq.)**
**(as to Defendant NYCSSS and Defendant Astarita)**

138.     Mr. Fernandez incorporates by reference the allegations contained in the previous paragraphs of the Complaint as if fully rewritten herein.

139.     Defendants NYCSSS and Astarita violated the Family and Medical Leave Act when it interfered with the exercise of Mr. Fernandez's rights under the FMLA by taking actions that discouraged him from exercising his right to take FMLA leave.

140.    Defendants further interfered with Mr. Fernandez's rights under the Family and Medical Leave Act by changing his schedule to make it impossible for him to take intermittent medical leave and not permitting Mr. Fernandez to work unless he provided a doctor's note stating that he did not have any physical limitations.

141.    Defendant's violations of the Family and Medical Leave Act, as described in this Complaint, were willful and intentional. Defendant did not make a good-faith effort to comply with the FMLA with respect to Mr. Fernandez.

142.    Mr. Fernandez is entitled to damages as a result of Defendant's unlawful acts, including past and future lost wages and benefits, liquidated damages, and reasonable attorneys' fees and costs of this action.

**NINTH CLAIM FOR RELIEF**
**(Unpaid Overtime Wages)**
**(Fair Labor Standards Act, 29 U.S.C. §§ 201, et seq.)**
**(as to Defendant NYCSSS)**

143.    Mr. Fernandez incorporates by reference the allegations contained in the previous paragraphs of the Complaint as if fully rewritten herein.

144.    Defendant NYCSSS's failure to pay Mr. Fernandez overtime wages for hours worked in excess of 40 hours per week at a wage rate of one-and-a-half times either his regular rate of pay, violated the Fair Labor Standards Act, 29 U.S.C. § 207(a)(1). As a result of those violations, Mr. Fernandez is entitled to recover from Defendant his unpaid overtime wages and an equal amount in the form of liquidated damages, as well as reasonable attorney's fees and costs of the action, all in the amount to be determined at trial.

**TENTH CLAIM FOR RELIEF**
**(Failure to Provide Accurate Wage Statements)**
**(New York Labor Law § 195(3), 12 NYCRR §§ 142-2.7)**
**(as to Defendant NYCSSS)**

145.    Mr. Fernandez incorporates by reference the allegations contained in the previous paragraphs of the Complaint as if fully rewritten herein.

146.    Defendant NYCSSS's failure to provide Mr. Fernandez with accurate wage statements as part of its refusal to pay the 16 hours of overtime that he worked in August 2016 violated the New York Labor Law and applicable regulations, NYLL § 195(3), 12 NYCRR §142-2.7. As a result of those violations, Mr. Fernandez is entitled to recover from Defendants damages of $250 for each work day that the violations occurred or continued to occur, up to $5,000, together with reasonable attorneys' fees, costs of the action, and pre-judgment interest, all in an amount to be determined at trial.

## ELEVENTH CLAIM FOR RELIEF
### (Intentional Infliction of Emotional Distress)
### (as to all Defendants)

147.    Mr. Fernandez incorporates by reference the allegations contained in the previous paragraphs of the Complaint as if fully rewritten herein.

148.    Defendants' conduct toward Mr. Fernandez was outrageous, extreme and intolerable.

149.    Defendants' conduct was intentional or reckless.

150.    Defendants' conduct included denying Mr. Fernandez disability-related accommodations ordered by his doctor, preventing or delaying his doctor's appointments, ordering Mr. Fernandez to do physically demanding work soon after he suffered a stroke, forcing him to do dangerous work even after he had lost consciousness on two previous occasions, threating Mr. Fernandez with violence and verbally assaulting him, and viciously mocking his disability, hiding his tools, hiding his time cards, and vandalizing his locker to intentionally cause Mr. Fernandez distress.

151.     Defendants' conduct caused Mr. Fernandez physical injury, including but not limited to: two seizures, falling down the stairs twice, and an ongoing neurological disability which causes partial paralysis of his body, numbness, pain, migraines, and walking with a limp.

152.     Defendants' conduct caused Mr. Fernandez severe emotional distress in the form of debilitating anxiety, depression, and stress. This emotional distress has affected all areas of his life, preventing Mr. Fernandez from enjoyment in life.

153.     There is a causal connection between Defendants' conduct and Mr. Fernandez's physical and emotional injuries.

154.     A reasonable person would not expect or tolerate the abuse of Mr. Fernandez by Defendants.

155.     Defendant Ortiz abused his position of authority over Mr. Fernandez when he engaged in extreme, outrageous and intolerable conduct.

156.     As a direct and proximate result of this injury from the Defendants, Mr. Fernandez has suffered and is suffering considerable injury, including but not limited to loss of substantial past and future salary and income, benefits and other privileges and entitlements of employment, loss of professional status and career enhancing and advancement opportunities, and loss of retirement savings and benefits. Mr. Fernandez has also suffered from emotional distress arising from the loss of his job, the damage to his reputation and the embarrassment, humiliation, and indignity arising from the discriminatory conduct of Defendants and/or agents or employees acting on its behalf, and the stress and anxiety caused by his wrongful termination and resultant financial hardship.

157.     As a consequence of their actions, Defendants are additionally liable for attorney's fees and other costs and interest in pursuit of this litigation.

## TWELFTH CLAIM FOR RELIEF
### (Negligent Infliction of Emotional Distress)
### (as to all Defendants)

158.    Mr. Fernandez incorporates by reference the allegations contained in the previous paragraphs of the Complaint as if fully rewritten herein.

159.    Defendants' conduct toward Mr. Fernandez was outrageous, extreme and intolerable.

160.    Defendants could reasonably foresee that their conduct would cause physical injury and resulting emotional distress.

161.    Defendants' conduct caused emotional shock to Mr. Fernandez, which resulted in physical injury.

162.    An unbroken chain of causation exists between the Defendants' conduct, Mr. Fernandez's emotional distress and his physical injury.

163.    Defendants refused Mr. Fernandez disability-related accommodations.

164.    Defendants' action put Mr. Fernandez in a state of shock, anxiety, depression and severe emotional distress.

165.    Mr. Fernandez's emotional state caused him the physical injuries, including but not limited to: two seizures, falling down the stairs twice, and an ongoing neurological disability which causes partial paralysis of his body, numbness, pain, migraines, and walking with a limp.

166.    Defendants' conduct caused Mr. Fernandez severe emotional distress in the form of debilitating anxiety, depression, and stress. This emotional distress has affected all areas of his life, preventing Mr. Fernandez from enjoyment in life.

167.    There is a causal connection between Defendants' conduct and Mr. Fernandez's physical and emotional injuries.

168.     A reasonable person would not expect or tolerate the abuse of Mr. Fernandez by Defendants.

169.     Defendant Ortiz abused his position of authority over Mr. Fernandez when he engaged in extreme, outrageous and intolerable conduct.

170.     As a direct and proximate result of this injury from the Defendants, Mr. Fernandez has suffered and is suffering considerable injury, including but not limited to loss of substantial past and future salary and income, benefits and other privileges and entitlements of employment, loss of professional status and career enhancing and advancement opportunities, and loss of retirement savings and benefits. Mr. Fernandez has also suffered from emotional distress arising from the loss of his job, the damage to his reputation and the embarrassment, humiliation, and indignity arising from the discriminatory conduct of Defendants and/or agents or employees acting on its behalf, and the stress and anxiety caused by his wrongful termination and resultant financial hardship.

171.     As a consequence of their actions, Defendants are additionally liable for attorney's fees and other costs and interest in pursuit of this litigation.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests that this Court enter a judgment:

A.     Declaring that the acts, practices, and omissions complained of herein are unlawful and violate the ADEA, ADA, FLSA, FMLA, NYSHRL, NYCHRL, and NYLL;

B.     Directing Defendants to pay Mr. Fernandez his back pay, front pay, compensatory

       damages, liquidated damages, and pre-judgment interest for violations of the

       ADEA, ADA, FMLA, FLSA, and NYLL.

C.     Directing Defendants to pay Mr. Fernandez his back pay, front pay, and

       compensatory damages for violations of the NYSHRL;

D.     Directing Defendants to pay Mr. Fernandez his back pay, front pay, compensatory

       damages, and pre-judgement interest for violations of the NYCHRL;

E.     Directing Defendants to pay exemplary and punitive damages commensurate with

       Defendants' ability to pay and sufficient to punish and deter continuation of

       Defendants' discriminatory and unlawful employment practices;

F.     Awarding Mr. Fernandez reasonable attorneys' fees and costs pursuant to 42

       U.S.C. § 2000e-5) and N.Y.C. Admin. Code § 8-502; and

G.     Awarding such other legal and equitable relief as this Court deems necessary, just

       and proper.

### JURY DEMAND

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Mr. Fernandez demands a

trial by jury on all questions of fact raised by the complaint

Dated:  New York, New York                    Respectfully submitted,
        June 25, 2019

                                              /s/
                                              Melissa Pierre-Louis


                                              **OUTTEN & GOLDEN LLP**
                                              Melissa Pierre-Louis
                                              Luis C. Hansen

Mikael Rojas[3]
685 Third Avenue, 25th Floor
New York, New York 10017
Telephone: (212) 245-1000
Facsimile: (646) 509-2071

*Attorneys for Plaintiff*

---

[3] Admission pending.